UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOSEPH M. ANDERS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] CV-04-CO-00775-W |
| | ] |
| ESTES GLEN HAVEN HEALTH AND | ] |
| REHABILITATION, LLC, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration defendant Glen Haven Health and Rehabilitation, L.L.C.'s[1] ("Glen Haven's") motion for summary judgment, which was filed on June 30, 2006.  (Doc. 42.)  Plaintiff Joseph M. Anders' only remaining claim against Defendant is one of racial discrimination in violation of 42 U.S.C. § 1981 ("§ 1981").[2]  The issues raised in Defendant's

---

[1] Defendant notes that Glen Haven Health and Rehabilitation, L.L.C. is the proper name of the defendant misidentified by Plaintiff as Estes Glen Haven Nursing Rehab. (Doc. 42, p.1.)

[2] The Court granted Defendant's motion to dismiss Plaintiff's claim of gender discrimination under § 1981 in its order dated February 3, 2006.  (Doc. 34.)

Page 1 of  17

motion for summary judgment have been briefed by Defendant, but Plaintiff has failed to respond.³ Upon full consideration of the legal arguments and evidence presented, Defendant's motion is due to be granted.

II.   Facts.⁴

Glen Haven is a long term care facility located in Northport, Alabama, which provides medical care to its residents through its staff of registered nurses ("RNs"), licensed practical nurses ("LPNs"), and certified nursing assistants. (Doc. 44, Exhibit 5.) Plaintiff was employed by Glen Haven as a LPN from May 1999 until his termination in March 2003. *Id*. While obtaining his LPN certification training at Shelton State Community College,

---

³This Court's Initial Order (Doc. 17), entered on August 4, 2005, establishes the briefing schedule for motions for summary judgment. *Id*. at 13-14. According to the Initial Order, Plaintiff's responsive submission was to be filed "not later than 21 days after the motion for summary judgment [was] filed." *Id*. at 13. Defendant's motion was filed on June 30, 2006. (Doc. 42.) Furthermore, the Court notified Plaintiff's counsel of his failure to respond as of the week of August 7, 2006, almost six weeks after Defendant's motion was filed. As of the date of this opinion, Plaintiff has neither filed his response nor has he filed a motion for leave to file his response out of time.

⁴The facts set out in this opinion are gleaned from the Defendant's submissions of facts claimed to be undisputed and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff had clinical training in various health care settings on how to administer medication. (Doc. 44, Exhibit 1, p. 20.) He received clinical training at Heritage nursing home, the VA Medical Center, DCH Regional Medical Center, and Glen Haven. *Id.* at 20-21. As part of his training, Plaintiff observed RNs administer medications to residents and patients. *Id.* at 22. He testified that he observed RNs explain medication to patients, give the medication in tablet form to the patients, observe the patients consume the medication, and then mark on the medication administration record ("MAR") that the patient had taken the medication in that order. *Id.* at 23-24. MARs are written records which document the administration of medication to hospital patients and nursing home residents. *Id.* 36-37. They reflect the patient's name, medication, date and time the medication is to be administered, and the LPN's initials on the MAR to indicate the proper medication was, in fact, provided on the specified date and time. *Id.*

Before working at Glen Haven, Plaintiff worked as a LPN at the VA Medical Center in Tuscaloosa, Alabama, for one year, followed by the Bibb County Department of Corrections for one month. *Id.* at 32-33, 51. While

working at the VA, Plaintiff administered medications and used the same procedure he observed in clinical training and had been taught at Shelton State.  *Id*. at 34-36.  While working at the Bibb County Correctional Facility, Plaintiff used the same procedure for administering medications except for the fact that the prisoners went to the infirmary instead of Plaintiff going to their cells.  *Id*. at 52-53.  Plaintiff resigned his employment at the Bibb County Correctional Facility in 1999 at the suggestion of a RN who worked at Glen Haven and was interested in hiring him as a LPN.  *Id*. at 53.  Glen Haven hired Plaintiff as a LPN in May 1999.  *Id*. at 55.

Plaintiff's duties at Glen Haven included the administration of medication to residents.  *Id*. at 72-73.  He accomplished this by carrying the medications that were to be administered to the residents on a rolling medication cart from one resident's room to the next on his assigned hall.  *Id*. at 73.  Glen Haven's medication cart has the medicine sorted by shift so that the morning shift (7 a.m. to 3 p.m.) medications were in the top set of drawers, the evening shift (3 p.m. to 11 p.m.) medications were in the second or middle row of drawers, and the night shift (11 p.m. to 7 a.m.) medications were in the bottom row of drawers.  *Id*. at 73-75.  Plaintiff

worked the evening shift, and thus administered medicine from the second row of drawers. *Id.* at 74. Sometimes, when a prescription is new, the medication will not be on the cart because it will not yet have arrived from the pharmacy. *Id.* at 74-75. In such instances, the medication is to come from a supply that is kept in Glen Haven's medication room. *Id.* at 77. If a LPN is administering medicine and looks on the MAR and notices that a particular prescription is to be given but is not on the cart, the LPN is to check the medication room to see if it is there and "nine times out of ten it is there." *Id.* at 100-01; Doc. 44, Exhibit 5.

The first time Plaintiff was discovered not to have administered medication to a resident at Glen Haven occurred on November 5, 2001, when Director of Nursing Joyce Bunch verbally counseled Plaintiff and placed him on 90 days probation for his failure to administer Coumadin to a resident.[5] (Doc. 44, Exhibit 1, pp. 88-89.) Plaintiff admits that he was verbally warned on November 5, 2001, but he maintains that he did, in fact,

---

[5]Coumadin is an anticoagulant sometimes referred to as a blood thinner. It is often prescribed to prevent blood clots, heart attacks, or strokes. Failure to administer Coumadin as prescribed can have serious medical consequences for the patient. (Doc. 44, Exhibit 1, pp. 93-94.)

administer the Coumadin. Ms. Bunch's notes on the Official Disciplinary Report indicate that the new Coumadin prescription had been ordered during the 7 a.m. to 3 p.m. shift on Friday, November 2, 2001, but it had not been administered on either that following Saturday or Sunday. The medication was still in the patient's bin in the medication room, demonstrating that it had not been administered to the resident. *Id*. at 98-99. Ms. Bunch then advised Plaintiff to be careful in the administration of medication because the dosages could change regularly. *Id*. at 91-92.

The second time Plaintiff was discovered not to have administered medication to a resident occurred in March 2003, and was found as a result of a medication cart audit. The audit was performed because the International Normalized Ratio ("INR") of the blood pressure for some of the residents was not normal and failed to improve after they had been prescribed Coumadin. (Doc. 44, Exhibit 5.) The audit was intended to help determine if the Coumadin had ever been administered to the patients. *Id*. As a result of the audit, it was determined that Plaintiff and three other LPNs, James Wilson (a white male), Kessa McKnight (a black female), and Mitchelle Jackson (a black female) had failed to give Coumadin to residents

assigned to their nurses' station. (Doc. 44, Exhibit 1, pp. 109-11.) At that time, Plaintiff was the full-time LPN on the 3 p.m. to 11 p.m. shift when the medication was to be given, and the other three LPNs were part-time employees who worked that shift when Plaintiff was off work. *Id.* at 110-11; Exhibit 5. Wilson, McKnight, and Jackson all received written warnings for their failure to administer the Coumadin because, unlike Plaintiff, this was their first time having committed this offense. *Id.* at 5.

After receiving the results of the cart audit on March 21, 2003, Glen Haven Administrator Vicki Worley instructed Ms. Bunch to terminate Plaintiff's employment. *Id.* Plaintiff later told the Alabama Department of Industrial Relations, "It was a mistake that [he] didn't give the meds," that he "could have failed to administer the medications," and he refused to further discuss the issue of giving the medications to the residents. (Doc. 44, Exhibit 1, pp. 158-60.) Plaintiff testified that his sole basis for believing that he was discriminated against on the basis of his race is that he saw a document prepared by the Department of Industrial Relations during the course of his unemployment compensation claim which reflected a telephone call between the Department's claims examiner and Ms. Worley

in which Ms. Worley allegedly stated that only two LPNs, Plaintiff and James Wilson, were involved in the failure to administer Coumadin, and that Plaintiff, who is black, was terminated, while Wilson, who is white, was given a written warning. *Id.* at 136-40, 148-49.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.  In evaluating the arguments of the movant, the court must

view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

Defendant Glen Haven has moved for summary judgment on Plaintiff's sole remaining claim of racial discrimination in violation of § 1981. (Doc. 42.) Defendant contends that it is entitled to summary judgment because it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment which was not a pretext for racial discrimination. *Id.* at 2.

The disparate treatment analytical framework developed for race discrimination cases under Title VII is equally applicable to proof of intentional discrimination under § 1981.  *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).  A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional discrimination.  *Standard v. ABEL Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  *Id.* (citing *Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir. 1989)).  Mr. Anders has offered no direct or statistical evidence and thus must rely on circumstantial evidence in his effort to prove his case.

Section 1981 claims based upon circumstantial evidence are reviewed by the Court by applying the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Under this analysis, the initial burden lies with the plaintiff to establish "a *prima facie* case of racial discrimination."  *McDonnell Douglas,* 411 U.S. at 802.  Once the plaintiff has met the *prima*

*facie* case requirement, the defendant must "articulate some legitimate, non-discriminatory reason for the [adverse employment action]." *Id.* This burden is "exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)). Finally, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's reasons were simply pretext for discrimination. *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997)).

To establish a *prima facie* case in a § 1981 discharge case, such as the one currently before the Court, a plaintiff must demonstrate: (1) "he is black;" (2) "he was qualified for the position" which he held; (3) he was discharged; and (4) the position "was ultimately filled by a white man." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Defendant admits in its brief that "it is undisputed that the Plaintiff is black, had the general experience and skill requirements to be an LPN, was discharged, and that the person who subsequently became the full-time LPN on the 3 p.m. to 11 p.m. shift at Glen Haven was white." (Doc. 43, p. 15.) Therefore, Plaintiff has stated a *prima facie* case, and the Court must turn its attention to whether Glen Haven had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

It "is not for the courts to second-guess" the business decisions of employers "as a kind of super-personnel department." *E.E.O.C. v. Total System Services*, 221 F.3d 1171, 1176 (11th Cir. 2000). Furthermore, in § 1981 cases, the alleged discriminatory actions may be taken for a good reason, bad reason, reason based on erroneous fact, or for no reason at all, so long as they are not taken for a discriminatory reason. *See Brown v.*

*American Honda Motor Co.*, 939 F.2d 946, 951 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)). In this case, Defendant's legitimate, non-discriminatory reason for Plaintiff's termination is that he failed to administer a prescribed medication, Coumadin, to a resident after a previous warning for the very same type of behavior. (Doc. 43, p. 16.) Glen Haven is not required to prove that Plaintiff actually failed to administer the medication - only that it had a good faith belief that he did so fail. *See Total System Services*, 221 F.3d at 1176; *Smith v. Pap Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981.").

The circumstantial evidence surrounding whether Plaintiff administered the Coumadin to the residents provided Glen Haven Administrator Vicki Worley with a good faith belief that Plaintiff did so fail, which led her to terminate Plaintiff's employment. For example, there were three residents assigned to Plaintiff's nurse's station who had

prescriptions for Coumadin. Their prescriptions were to be administered during Plaintiff's 3 p.m. to 11 p.m. shift. Laboratory tests of the residents' INRs were not improving after increasing dosages of Coumadin had been prescribed, which caused the doctors to question whether the Coumadin had actually been administered. This led to an audit of the medication cart assigned to that nurse's station, revealing that there was no supply of Coumadin on the cart and that the entire supply remained unopened in the residents' individual medication bins in the supply room.

Ms. Worley concluded that Plaintiff and the three other LPNs were not following the proper procedure for signing off on the MARs after verifying that they were actually giving each medication listed on the MARs. Defendant opines that this could happen if a LPN simply initials that he or she had given every medication on the MAR and then proceeds to give the residents the medications that were already on the cart instead of following procedure and giving each medication prior to signing off on the MAR. It is undisputed that Plaintiff initialed the MAR indicating that he administered the Coumadin, but signing the MAR is not the same as actually administering

it to the residents. For these reasons, Defendants have provided the Court a legitimate, non-discriminatory reason for Plaintiff's discharge.

Furthermore, Plaintiff has not met his burden of establishing that the proffered comparators are, in fact, similarly situated. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("[P]laintiff must show that he and the employees are similarly situated in all relevant respects."). Plaintiff points to James Wilson, a white LPN, as a comparator, and he seems to ignore the fact that two black LPNs, Jackson and McKnight, were also disciplined in the exact same manner as Wilson. (Doc. 2, p. 5.) Mr. Wilson is not similarly situated with Plaintiff in all respects. For example, Wilson had never previously been discovered to have failed to administer medications to residents. The March 2003 incident was Plaintiff's second offense. Plaintiff had repeated the exact same behavior for which he had previously been warned, whereas, Wilson, Jackson, and McKnight had only been warned once. *See, e.g., Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452 (11th Cir. 1987) (deciding that a finding of no pretext was not clearly erroneous because the alleged comparator was not similarly situated because the plaintiff had been previously warned and had supervisory authority). In

addition, Plaintiff was the full-time LPN on duty for the 3 p.m. to 11 p.m. shift, whereas Wilson, Jackson, and McKnight were merely part-time LPN's who filled in during Plaintiff's days off.  *See id.*

Of the four LPNs who were discovered to have failed to administer the Coumadin to the residents as a result of the March 2003 medication cart audit, three were black and one was white.  Wilson, Jackson, and McKnight were issued written warnings as it was their first offense.  Plaintiff was also given a written warning for his first offense in November 2001.  For these reasons, Plaintiff has failed to show that he is similarly situated to a comparator who was treated differently based upon race.

Defendant Glen Haven has provided the Court with a legitimate non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff has failed to meet his burden of providing a similarly situated comparator.  Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of discrimination based upon his race in violation of § 1981.

V.      Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted.  A separate order in conformity with this opinion will be entered.

Done this <u>31st</u> day of <u>August 2006</u>.

_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
124153